FRANK STADMILLER *vs.* CHARLES G. SCHIRMER & others.

Suffolk. January 11, 1924. — February 28, 1924.

Present: RUGG, C.J., DECOURCY, CROSBY, PIERCE, & WAIT, JJ.

*Contract,* Performance and breach, Implied, Of stockbroker. *Stockbroker.*

An action of contract for money had and received cannot be maintained against a stockbroker upon evidence tending to show merely that the defendant at the plaintiff's request had purchased certain corporate stock for which the plaintiff had paid, that the certificates were delivered to the plaintiff by the defendant and later were returned by the plaintiff to the defendant for the purpose, as stated by the defendant, " of making some adjustments, bookkeeping entries," and that thereafter the defendant had refused to deliver the securities to the plaintiff.

A motion that a verdict be ordered for the plaintiff should not be granted in an action by a customer against a stockbroker for money had and received which was heard upon an auditor's report and other evidence, where the auditor found that without fraud the defendant had purchased and sold securities for the plaintiff in substantial performance of the plaintiff's direction and had expended money in the plaintiff's behalf in excess of the value of certain securities which he had deposited with the defendant as collateral to secure him against loss by reason of obligations which he had assumed at the plaintiff's request.

At the trial of an action by a customer against a stockbroker for money had and received, it appeared that, at the suggestion of the defendant and without fraud on his part, the plaintiff had employed the defendant

to purchase for him certain stocks and rights to purchase stock; that the suggestion of the defendant was made by reason of representations of a third party, and, although the time of delivery of the stock was not discussed between them, the suggestion was made and the transaction was entered into upon the understanding and belief of all parties that the stock would be available for delivery at once or within a few days. It transpired that the stock was not deliverable for several months, as a consequence of which interest charges and like matters made the transaction result in a loss instead of a profit. The defendant held securities deposited with him by the plaintiff to cover such loss resulting from his advancements on the plaintiff's behalf. *Held,* that

(1) The value of the securities could not be recovered by the plaintiff from the defendant on the ground of failure of consideration by reason of mutual mistake, the mistake not relating to a fact which was of the essence of the contract between the plaintiff and the defendant;

(2) It would be inequitable to permit a recovery by the plaintiff of the value of the securities left by him with the defendant as collateral without a reimbursement to the defendant of money which he had expended for the plaintiff at the plaintiff's request;

(3) A verdict for the defendant was warranted.

CONTRACT OR TORT against Charles G. Schirmer, Henry E. Hammond, Louis M. Atherton, John A. Caldwell and Frank A. Schirmer, copartners, conducting a stock broking business under the name of Frank A. Schirmer and Company, the declaration as amended being described in the opinion. Writ dated March 19, 1920.

In the Superior Court, the action was referred to an auditor. Material findings by the auditor were as follows: The plaintiff for a number of years previous to October 31, 1919, had bought securities from the defendants, paying cash therefor. On that date he paid the defendants $3,533.75, covering the purchase of certain stock. He also talked with the defendant Frank A. Schirmer, who told him " that he, Schirmer, had bought some Texas Oil rights and had sold some Texas stock. Schirmer asked the plaintiff if he wanted to make $1,000. After discussing the proposed transaction, the plaintiff suggested that he make $2,000. The defendant, Hammond, was then called in and the plaintiff gave an order to the defendants to buy Texas Oil rights and to sell Texas Oil stock. In due course the plaintiff was given, by the defendants, brokers' ' bought ' and ' sold ' slips, setting out a statement of the purchase of

Texas Company rights and the sale of Texas Oil New stock. The defendants, in fact, did buy for the plaintiff's account Texas Company rights to the amount of $32,035 and sold for his account Texas Oil New stock to the amount of $53,147.

" Within a few days of October 31, 1919, certificates covering the shares of stock purchased by the plaintiff from the defendant on that date were issued in the name of the plaintiff and were left by him with the defendants as collateral to secure the plaintiff's account in the transaction in Texas Oil rights and stock.

" It developed later that the new Texas Oil stock was not deliverable for several months, and consequently interest charges and like matters would make the transactions result in a loss instead of a profit. When Schirmer told the plaintiff that he had himself bought some Texas Oil rights and sold some Texas stock, Schirmer understood from information furnished him by a stockholder in the Texas Company and from former transactions that the Texas stock would be available for delivery at once or within a few days. Upon that understanding, Schirmer made his own transaction and advised the plaintiff to make his. Nothing was said to the plaintiff at the time he gave his order to the effect that the Texas stock would not be delivered for many months. The matter of future delivery was not mentioned in this conversation. Hammond after reporting the execution of the orders on the next morning, at the request of the plaintiff figured out the amount of the plaintiff's profit and read to the plaintiff from a slip of paper the amount of these figures. Although the matter of delivery was not mentioned, I think it is a fair inference that all parties to the transaction supposed that the Texas New stock would be delivered in a few days and I so find."

" I find that there was no fraud on the part of the defendants, Frank A. Schirmer and Hammond, and that they acted in good faith in advising the plaintiff to enter into this transaction.

" I find that on March 3, 1920, and on March 19, 1920, the defendants had advanced on the plaintiff's account the purchase price of the rights and the instalments of $6,000

on the new stock, and consequently that the defendants had a right to retain in their possession the shares, purchased by the plaintiff on October 31, 1919, which had been given to them for security. Accordingly I find that in this action the defendants owe the plaintiff nothing."

In the Superior Court, the action was tried before *Callahan,* J., upon the auditor's report and testimony by the plaintiff and the defendant Frank A. Schirmer. Material evidence other than that above quoted is described in the opinion. At the close of the evidence, the plaintiff elected to stand on the second count of his declaration in contract upon an account annexed, described in the opinion, and moved that a verdict be entered for him. The motion was denied. On motion by the defendants, a verdict was ordered in their favor. The plaintiff alleged exceptions.

*W. R. Bigelow,* for the plaintiff.

. *C. F. Lovejoy,* for the defendants.

PIERCE, J. The declaration as amended, in this action of contract or tort is in two counts: a first count for the conversion of one hundred shares of Ventura Consolidated Oil Fields stock and fifty shares of Libby, McNeil & Libby stock; and a second count, for money had and received, to recover the value of the stock described in the first count, aggregating $3,511.25. The answer is a general denial.

After a trial before an auditor, and the filing of a report by him adverse to the claim of the plaintiff, the case was tried to a jury. At the close of the evidence, all of which is contained in the bill of exceptions, the plaintiff " elected to stand on the second count of his declaration, to wit, the count in contract." He then moved " that upon all the evidence as a matter of law a verdict be ordered for the plaintiff for the amount claimed in the second count of his declaration with interest from the date of the writ." The trial judge denied the motion and the plaintiff duly saved an exception thereto. " The defendants thereupon made a motion that the court rule on the pleadings and the evidence that the plaintiff is not entitled to recover;" the judge granted that motion and directed that a verdict be returned for the defendants. The plaintiff duly excepted to this

order, and the jury thereupon returned a verdict for the defendants in accordance with the direction of the court.

This ruling was right if the testimony of the plaintiff stood in every respect unimpeached and uncontradicted. That evidence, in substance, was that some time in October, 1919, the plaintiff bought of the defendants one hundred shares of Ventura Consolidated Oil Fields Company and fifty shares of Libby, McNeil & Libby stock for $3,533.75; that on October 31, 1919, he gave the defendants a check for the amount of his purchase, $3,533.75; that he left the securities at the request of the defendants " for the purpose, so they said, of making some adjustments, bookkeeping entries; " that on November 12, 1919, the securities were returned to him without any conversation or communication at that time; that on the same day, on the statement of the defendants that there was a mistake in sending the securities to him, " We need them to make some book adjustments," he said, " All right, if you want them back I will be very glad to bring them back," and he brought them back; that later he learned that the defendants held the securities as collateral on a Texas oil transaction with the defendants; that on March 3, 1920, he made a demand that the securities be returned; and that the defendants refused to make such return in response to his demand. The plaintiff in cross-examination testified: " I most positively did not deliver this Ventura and Libby stock to Schirmer and Company [the defendants] as collateral; I left it at the suggestion of one of the parties for the purpose, so they said, of making some adjustments, bookkeeping entries." The plaintiff offered no evidence, and none appears in the bill of exceptions, that the defendants had sold the securities and received the money from them when the action was brought on March 19, 1920.

The foregoing statements of facts, if believed by the jury, established a conversion of the securities by the defendants; but did not permit the owner to waive the tort and bring an action for money had and received, in the absence of evidence that the defendants had sold the securities and received the money. *Jones* v. *Hoar*, 5 Pick. 285, 290.

*Gilmore* v. *Wilbur*, 12 Pick. 120.   *Berkshire Glass Co.* v. *Wolcott*, 2 Allen, 227.   *Hagar* v. *Norton*, 188 Mass. 47, 50. *Arizona Commercial Mining Co.* v. *Iron Cap Copper Co.* 236 Mass. 185, 190.

It is plain the plaintiff cannot recover on a count for money had and received if the defendants purchased and sold stock for him, in substantial performance of his direction, and expended money in his behalf in excess of the value of the securities which he had deposited with them as collateral, while his indebtedness remained unpaid.   That the securities were deposited as collateral for the obligations which the defendants assumed at the request of the plaintiff, and that payments exceeded the value of the securities, are found by the auditor.

The contention of the plaintiff that the consideration for the agreement, for the performance of which the collateral was left with the defendants, failed, in that the defendants and plaintiff misjudged or miscalculated the time when the stock to be purchased from the plaintiff could be delivered, is true in so far only as such mutual mistake unavoidably inhered in the nature of the transaction.   The mutual mistake on the evidence was collateral to the essential thing contracted about, *Cavanagh* v. *Tyson, Weare & Marshall Co.* 227 Mass. 437, and it would be inequitable to permit a recovery of the value of the securities, without a reimbursement of the money which the defendants had expended for the plaintiff in the purchase of the stock which the plaintiff had requested the defendants to purchase.   *Marston* v. *Singapore Rattan Co.* 163 Mass. 296.   Williston on Contracts, § 1595.

*Exceptions overruled.*