NELLIE R. CAVANAGH, Guardian, et al., Appellants, v. FRANK A. O'CONNOR et al., Appellees.

**CONTINUANCE:** Justifiable Refusal. An order refusing a continuance to a guardian in order to obtain the personal presence of the ward will be sustained on appeal when it is made to appear: (1) That it was admitted that the ward, if present, would testify to the matters properly stated in the motion; (2) that, by reason of the weakened physical condition of the ward, he would be of no assistance in the trial of the cause, if present; and (3) that, since the trial, the ward has died.

**TRIAL:** Directed Verdict—Refusal to Proceed With Trial. Directed verdict for defendant is proper when, at the time the cause is reached for trial, plaintiff refuses to impanel the jury, introduce evidence, or otherwise to take part in the trial.

**TRUSTS:** Nonliability of Trustee. Pleading reviewed, and held to state no fact which would render the trustee of an express trust personally liable for the claim sued on.

*Appeal from Chickasaw District Court.*—H. E. TAYLOR, Judge.

MARCH 7, 1922.

REHEARING DENIED OCTOBER 24, 1922.

ACTION at law by the guardians of E. T. Runion to recover personal judgment against defendant trustees in the sum of $6,220 with interest for the support of E. T. Runion while in the care and custody of Nellie R. Cavanagh from November 1915 to September 1919. Upon motion of the defendants the court directed a verdict in defendants' favor. Judgment was entered against plaintiffs for costs. Plaintiffs appeal.—*Affirmed.*

*R. Feyerbend,* for appellants.

*Hurd, Lenehan, Smith & O'Connor* and *D. D. Murphy,* for appellees.

DE GRAFF, J.—Nellie R. Cavanagh was the guardian of the person of E. T. Runion by appointment under an order of court in the state of Michigan. R. Feyerbend was the guardian of the property of E. T. Runion by appointment under order of the district court of Iowa in and for Chickasaw County. Plaintiffs seek to recover a personal judgment against Frank A. O'Connor and William J. Kennedy, who were the original trustees named by E. T. Runion in a trust agreement executed by him transferring all of his property to said trustees for certain purposes declared in the trust. This trust agreement was subject to attack by the personal guardian in a prior proceeding resulting in the affirmance of its validity. See *Cavanagh v. O'Connor,* 186 Iowa 257. See, also, *Cavanagh v. O'Connor* 189 Iowa 171.

After the execution of the agreement (the material provisions of which will be found in the decisions cited above) Runion lived for a while at the Home for the Aged at Techny, Illinois under the supervision of the Servant Sisters of the Holy Ghost, the beneficiary of the trust. Nellie Cavanagh subsequently and voluntarily took Mr. Runion to her home in Detroit, Michigan and there was appointed the guardian of his person. For nearly six years Runion was under her care, and to recover the reasonable value of her services and support this action was commenced.

Before proceeding with the trial plaintiff filed a motion for a continuance on the ground that the personal presence of Runion was material and necessary, and by reason of sickness he was unable to attend the trial. This motion was overruled and exception taken. Prior to the ruling of the court the defendants consented that the evidence of E. T. Runion taken on the former trial might be used without objection on this trial, and further admitted that "the said Runion, as witness, if present, would testify to the facts stated in plaintiffs' application in so far as said facts are properly stated and subject to all legal objections to the admissibility of said testimony when offered." These admissions were sufficient to overrule plaintiffs' motion.

1. CONTINUANCE: justifiable refusal.

It appears that plaintiffs' primary reason for a continuance

was not based upon the enforced absence of Runion as a witness, but as a client whose advice and counsel were necessary to enable plaintiffs properly to try the case. The record clearly shows that by reason of the advanced age of Runion and his physical and mental condition at that time he would have been of little assistance, if any, to the guardian-plaintiffs, and the trial court made a special finding to this effect.

A ruling on a motion for continuance may be reviewed on appeal but it is not an appealable order. Such a ruling involves the exercise of sound judicial discretion. Prejudice must be shown by appellant. The instant ruling is without prejudice by reason of the death of Mr. Runion a few months subsequent to the trial. If sufficient grounds for reversal exist, no beneficial result would be obtained by a reversal. *Witmore v. Burgan*, 70 Iowa 161. The motion was, however, properly denied.

Upon the overruling of plaintiffs' motion for continuance the cause proceeded to trial. A jury was impaneled and an opportunity given to plaintiffs through their attorney to ex-

2. TRIAL: directed verdict: refusal to proceed with trial.

amine for cause. In brief every opportunity was given to plaintiffs to proceed in the orderly, customary, and legal way. The situation was quite unusual, but the court was patient. The record shows the following: "On the 30th day of March, 1921 this cause was tried to a jury and the following proceedings were had: By the court: You may draw a jury in this cause. At this time the selection of a jury is commenced. The prospective jurors are sworn by the clerk. By the court: Plaintiffs may examine for cause. By Mr. Feyerbend: The plaintiff in this case states to the court— The Court: Do you want to examine for cause? Mr. Feyerbend: The plaintiffs state to the court that they do not wish to examine for cause or in any other way enter into the trial of this cause and hereby object to the proceedings and to the trial and further state, that the grounds for objection are on file in the clerk's office and plaintiffs refuse to go to trial in this cause, and ask the court to reconsider his ruling overruling their motion for continuance. The Court: There are no reasons on file with the clerk other than those set out in the motion for continuance and the court gave the motion

a full and complete investigation and finds that the plaintiffs may as well go to trial at the present time as at another time. The defendants have offered to admit everything which plaintiffs claim they could prove by the material witness. The jury is now called and ready to be examined for cause by plaintiffs and the cause will proceed to trial. The sole question involved in this case is simply a legal question as to whether or not the defendants can be held personally for the claims of plaintiffs.

Now you may examine for cause. Mr. Feyerbend: Would it be proper for me to ask the court to make a finding as to the necessity for the presence of Mr. Runion for the purpose of advising with his counsel in the trial? The Court: The court has investigated and finds that Mr. Runion could not in any way advise counsel for plaintiffs in any material way in the trial of this case and would certainly be in no position to be of any material assistance in the cause and counsel for plaintiffs may as well proceed to draw the jury now as at any time. The Court: The jury is now drawn and counsel for plaintiffs may examine for cause. Mr. Feyerbend: Counsel for plaintiffs renews his statement objecting to the further carrying on of this trial and refuses for the reasons stated in the motions for continuance to proceed in any way in this trial. The Court: Do you waive examination for cause? Mr. Feyerbend: I do not wish to waive examination, because I refuse to go on— The Court: It is up to you to either examine for cause or not. The jury is drawn. Do you want to examine, or do you not want to examine for cause? Mr. Feyerbend: Plaintiffs state that they will neither examine this jury nor waive examination for the reason that they think either examining the jury or waiving examination would jeopardize their case which is in the opinion of plaintiffs now ready for revision and appeal in the Supreme Court. The Court: Do you want to take part in the trial of this cause or not? Mr. Feyerbend: No, I don't. By Mr. Murphy. I want to inquire whether counsel for plaintiffs appear or whether he has withdrawn his appearance. Mr. Feyerbend: Counsel states he has not withdrawn his appearance but simply refuses to go on with the trial of this cause at this time and at this term of court for the reasons stated in the paper filed with

the clerk before any statements by him were made to this proceeding.''

The plaintiffs having refused to examine for cause defendants were given that opportunity and all challenges for cause were waived. The record also discloses that the plaintiffs refused to take any further part in the selection of the jury and refused to exercise peremptory challenges. The court directed the clerk to note plaintiffs' waiver of challenges for cause and directed the clerk to strike the necessary number of names from the panel on behalf of plaintiffs. It is also shown that plaintiffs refused to make any opening statement to the jury and stated through their attorney at that time that ''they did not intend to go ahead in this proceeding.'' After the jury was sworn the plaintiffs were requested to proceed with the case and offer their evidence. Again they refused and no evidence was introduced on behalf of the plaintiffs. The court made inquiry at this time whether plaintiffs now rest to which counsel replied that ''he neither rests his case nor is he doing anything that could in any way be construed as a participation in the trial except as he appears to object to the proceedings.'' Finally the court inquired do you want us to wait any longer? To which Mr. Feyerbend replied: ''No. You don't need to wait any longer. I have nothing to introduce now and don't intend to introduce anything.''

The defendants then moved the court for a directed verdict which was sustained by the court, and a verdict was duly returned upon which the judgment was entered. The burden of proof was upon the plaintiffs, and by the plaintiffs' refusal to proceed, the court could have done one of two things either to dismiss plaintiffs' petition at their costs, or sustain defendants' motion for a directed verdict. Either takes us to the same goal and gives the same results. The court properly directed a verdict. *Mellerup v. Travelers' Ins. Co.* 95 Iowa 317; *Tisdale v. Ennis,* 144 Iowa 306; *Jones v. Williamsburg C. F. Ins. Co.* 83 Kan. 682 (112 Pac. 826); *Riverside Lbr. Co. v. Schmidt,* 130 Mo. App. 227 (109 S. W. 71).

We now pass to the merits of the controversy and at the threshold inquire what facts are pleaded sufficient to predicate

a personal liability against the defendant trustees. This was the issue before the court. No allegation is found in plaintiffs' petition that attempts to make the trust fund liable for the services performed and claimed by plaintiffs. It was a demand pure and simple against Messrs. O'Connor and Kennedy to personally pay the claim from their own funds and out of their own pockets.

*3. TRUSTS: nonliability of trustee.*

There is no personal liability nor were facts pleaded upon which the same could be based. Runion did not give his property to O'Connor and Kennedy in consideration of their personal promise to support and care for him and this fact alone distinguishes this case from *Riddle v. Beattie*, 77 Iowa 168, and cases of like import. They assumed to act as trustees and under such a contract no personal liability attaches under the facts pleaded. *Faber & Co. v. Finch & Crocker*, 12 Iowa 95. This is not a case in which plaintiffs sue for an alleged breach of trust but they attempt to recover a personal judgment on a claim due them under the terms of the trust. As a general rule a trustee is not personally liable unless (1) he makes himself personally liable to the fund if it becomes depleted through his bad faith or negligence; or (2) unless he is personally liable to the *cestui que trust* by virtue of an adjudication or an accounting fixing the amount due, or an account stated or its equivalent by which the trustee waives his trusteeship, or (3) unless he is a quasi trustee (as distinguished from an express trustee) in which the doctrine of trusts may be invoked to obtain the benefit of equitable remedies. *Spencer v. Clarke* 25 R. I. 163 (55 Atl. 329); *Norton v. Ray*, 139 Mass. 230 (29 N. E. 662); *Zeideman v. Molasky*, 118 Mo. App. 106 (94 S. W. 754); *Sherman v. Skuse*, 166 N. Y. 345 (59 N. E. 990); *Herrick v. Snow*, 94 Me. 310 (47 Atl. 540); *Johnson v. Johnson*, 120 Mass. 465; *Husted v. Thomson*, 158 N. Y. 328 (53 N. E. 20); *Daugherty v. Daugherty*, 116 Iowa 245; *Toledo Sav. Bank v. Johnston*, 94 Iowa 212; *Dias v. Brunell's Exr.*, 24 Wend. (N. Y.) 9.

The money and property of the estate are intact and available for the payment of plaintiffs' claim, if it is legal and proper. But a trustee of an express trust cannot be made personally liable for a claim against the trust estate by refusing to allow

it as long as he has done nothing to deplete or impair the integrity of the estate itself or to prevent the claimant from asking an adjudication against the estate. Under the record the directed verdict was inevitable. No error appears and the judgment entered is—*Affirmed.*

STEVENS, C. J., WEAVER and PRESTON, JJ., concur.